## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, and ALLEGHENY COUNTY HEALTH DEPARTMENT, <br><br> Plaintiffs, <br><br> v. <br><br> ALLEGHENY COUNTY SANITARY AUTHORITY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION NO. |

### COMPLAINT

Plaintiffs, the United States of America, by the authority of the Attorney General and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), the Commonwealth of Pennsylvania, Department of Environmental Protection ("PADEP") and the Allegheny Health Department ("ACHD") allege as follows:

### INTRODUCTION

1.  This is a civil action brought pursuant to Section 309(b) and (d) of the Clean Water Act (also referred to herein as the "Act"), 33 U.S.C. § 1319(b) and (d), for permanent injunctive relief and the assessment of civil penalties against the Allegheny County Sanitary Authority ("ALCOSAN"). The United States, PADEP, and ACHD allege that ALCOSAN discharged and/or continues to discharge pollutants, including sewage, into navigable waters of the United States in violation of Section 301 of the Act, 33 U.S.C. § 1311, and the conditions and limitations of National Pollutant Discharge Elimination System ("NPDES") permit No. PA0025984 issued to ALCOSAN by PADEP pursuant to Section 402 of the Act, 33 U.S.C.

§ 1342, and Section 202 of the Pennsylvania Clean Streams Law ("Clean Streams Law"), 35 P.S. § 691.202, and which was renewed on May 22, 2007 (the "NPDES Permit").

2.    PADEP is the agency within the Commonwealth of Pennsylvania (the "Commonwealth") that is charged with the duty and authority to administer and enforce, *inter alia*, the Clean Streams Law, the Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S.§§ 691.1-691.1001. PADEP alleges that ALCOSAN discharged and/or continues to discharge pollutants, including sewage, into waters of the Commonwealth in violation of Sections 201, 202 and 401 of the Clean Streams Law, 35 P.S. §§ 691.201, 691.202, and 691.401; and the rules and regulations promulgated thereunder.

3.    ACHD is the local health department with the power and duty to prevent or remove conditions which constitute a menace to public health in Allegheny County, Pennsylvania, pursuant to the Local Health Administration Law, Act 315 of August 24, 1951, P.L. 1304, as amended, 16 P.S. § 12001 *et. seq.* ("Act 315"), Sections 12010 and 12012. ACHD also has the authority and a duty to administer and enforce, *inter alia*, the Allegheny County Health Department's Rules and Regulations for Sewer Management, Article XIV ("ACHD's Article XIV"). ACHD alleges that ALCOSAN discharged and/or continues to discharge pollutants, including sewage, into the waters of Allegheny County, and that these discharges constitute a nuisance and menace to public health. ACHD further alleges that these discharges into waters of the Commonwealth are in violation of ACHD's Article XIV, Sections 1404.1(A), 1404.1 (F), and 1404.1 (G).

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

5.    This Court has supplemental jurisdiction over the pendent PADEP state law claims and the ACHD state law claims alleged herein pursuant to 28 U.S.C. § 1367(a) because the state claims are so related to the federal claims as to form part of the same case or controversy.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), because ALCOSAN is located in this district and because the causes of action alleged herein arose in this district.  Venue in this district is also proper under 28 U.S.C. §§ 1391(c) and 1395(a).

## ALCOSAN

7.    On March 13, 1946, ALCOSAN was created as a municipal authority under the Municipal Authorities Act, as amended, 53 Pa. C.S.A. §§ 5601-5623, for the purpose of providing sewage collection and treatment in Allegheny County and other adjacent areas and for which purpose, ALCOSAN constructed, operates and maintains a Publicly Owned Treatment Works ("POTW").  The geographic area served by ALCOSAN includes approximately 83 municipalities that convey over 1,000,000 gallons per day of sewage to the POTW.  As part of the POTW, ALCOSAN's owns and operates a sewage treatment plant along the Ohio River on the north side of Pittsburgh, in Allegheny County, Pennsylvania (the "Sewage Treatment Plant").

3

8.     ALCOSAN is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5); Section 1 of the Clean Streams Law, 35 P.S. § 691.1; and Section 3 of ACHD's Article XIV.

## FEDERAL STATUTORY BACKGROUND

9.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into the waters of the United States by any person except in accordance with that section of the Clean Water Act and, an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

10.     Under Section 402(a) of the Clean Water Act, 33 U.S.C. § 1342(a), the Administrator of EPA may issue NPDES permits to authorize the discharge of pollutants into waters of the United States, subject to the conditions and limitations set forth in such permits.

11.     Effluent limitations, as defined in Section 502(11) of the Clean Water Act, 33 U.S.C. § 1362(11), are restrictions on the quantity, rate, and concentration of chemical, physical, biological, and other constituents of wastewater discharges.  Effluent limitations are among the conditions and limitations prescribed in NPDES permits issued under Section 402(a) of the Act, 33 U.S.C. § 1342(a).

12.     ALCOSAN receives flows from municipal systems that are designed to convey sewage and storm water ("Combined Sewer Systems") and from municipal systems that are designed to convey only  sewage ("Sanitary Sewer Systems").  Section 402(q) of the Clean Water Act, 33 U.S.C. § 13423(q), provides that each permit, order, or consent decree issued after December 21, 2000, for discharges from a Combined Sewer System, must conform to EPA's Combined Sewer Overflow Policy, 59 Fed. Reg. 18688 (May 19, 1994).  Discharges from

4

Sanitary Sewer Systems are prohibited, and cannot be permitted under Section 402 of the Clean Water Act, 33 U.S.C. §1342. See 33 U.S.C. § 1341(a).

13.     Sections 308 and 402(a)(2) of the Clean Water Act, 33 U.S.C. §§ 1318 and 1342(a)(2), provide that a NPDES permit may also require, among other things, data and information collection and reporting, the establishment and maintenance of monitoring equipment, the sampling of effluent, and the reporting on a regular basis to the permit-issuing authority regarding the permittee's discharge of pollutants.

14.     Section 402(b) of the Clean Water Act, 33 U.S.C. § 1342(b), authorizes EPA to delegate permitting and inspection authority to states that meet certain requirements.

15.     On or about July 1, 1978, the Administrator of EPA authorized the Commonwealth to issue NPDES permits under the Clean Water Act and the Commonwealth's authority to issue such permits has been in effect at all times relevant to this Complaint.

16.     Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), authorizes the Administrator of EPA to commence a civil action to obtain civil penalties or other appropriate relief, including a permanent or temporary injunction, when any person violates Section 301 of the Clean Water Act, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued under Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

17.     As signatory to this Complaint, PADEP has actual notice of the commencement of this action, as required by Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).  Also as signatory to this Complaint, PADEP is a party to this action as required by Section 309(e) of the Clean Water Act, 33 U.S.C. § 1319(e).

18.     Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the Act, 33 U.S.C. § 1311, or violates any permit condition

or limitation in a permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342, shall be subject to a civil penalty of up to $25,000 per day for each violation occurring prior to January 31, 1997. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410, enacted October 5, 1990; 104 Stat. 890), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note; Pub. L. 104-134, enacted April 26, 1996; 110 Stat. 1321), EPA may seek civil penalties of up to $27,500 per day for each violation occurring on or after January 31, 1997, and up to $32,500 per day per violation on or after March 15, 2004, pursuant to 40 C.F.R. Part 19.

19.     The United States Department of Justice has authority to bring this action on behalf of EPA pursuant to Section 506 of the Clean Water Act, 33 U.S.C. § 1366. The Commonwealth's authority to bring this action is vested in PADEP pursuant to Section 309(e) of the Act, 33 U.S.C. § 1319(e), and Section 601 of the Clean Streams Law, 35 P.S. § 691.601. ACHD has authority to bring this action under Act 315 and ACHD Articles XIV (Sewage Management) and XVI (Environmental Health Civil Penalties).

## FACTUAL ALLEGATIONS

20.     ALCOSAN own and operates, as part of the POTW, the Sewage Treatment Plant, which is located at 3300 Preble Avenue in Pittsburgh, Pennsylvania.

21.     The Sewage Treatment Plant receives wastewater from residential, commercial and industrial sources located in the City of Pittsburgh and in all or parts of 82 other municipalities and boroughs located in Allegheny County, Washington County and Westmoreland County.

22.     ALCOSAN also owns and maintains, as part of the POTW, sewer interceptors, sewer facilities and sewer conveyance lines (the "Conveyance System"), which convey wastewater into the Sewage Treatment Plant. The 83 municipalities served, in whole or in part, by ALCOSAN own and maintain their respective sewer systems which convey wastewater to the Conveyance System.

23.     ALCOSAN discharges raw or partially treated pollutants, including sewage, from outfalls, manholes, and pump stations at the Sewage Treatment Plant and within the Conveyance System into the Ohio River, the Allegheny River, the Monongahela River and/or their tributaries.

24.     The Ohio River, the Allegheny River, the Monongahela River, and/or their tributaries are "navigable waters" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7), and "Waters of the Commonwealth" within the meaning of Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

25.     Sewage, commercial and industrial waste, and their constituents are "pollutants" within the meaning of Section 502(g) of the Clean Water Act, 33 U.S.C. § 1362(g), and are defined as "pollution" by Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

26.     The outfalls, manholes, and pump stations at the Sewage Treatment Plant and within the Conveyance System from which ALCOSAN discharges are "point sources" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

27.     Outfall 001 is the outfall at the Sewage Treatment Plant through which treated wastewater is discharged to the Ohio River. The NPDES Permit authorizes the discharge of wastewater from Outfall 001 provided that certain pollutants in the treated wastewater do not exceed specific effluent limitations set forth in the NPDES Permit.

7

28.     The NPDES Permit also authorizes discharges of combined sewage in certain circumstances from two hundred fifty-nine (259) outfalls ("Combined Sewer Outfalls" or "CSOs").

29.     The applicable NPDES Permit does not sanction discharges or overflows from unpermitted outfalls at the Sewage Treatment Plant unless ALCOSAN meets certain conditions allowing it to bypass one or more treatment units at the Sewage Treatment Plant.  In addition, the applicable NPDES Permit does not sanction discharges as overflows under any condition from various unpermitted outfalls in the Conveyance System.

## FEDERAL CLAIMS

### FIRST CLAIM FOR RELIEF
*(Illegal Discharge of Untreated Sewage or Partially Treated Sewage
from the Conveyance System)*

30.     Paragraphs 1 through 29 are realleged and incorporated by reference.

31.     On numerous occasions since May 1, 2002, ALCOSAN discharged untreated or partially treated pollutants, including sewage, from outfalls, pump stations, and manholes within the Conveyance System into the Ohio River, the Allegheny River, the Monongahela River, and/or their tributaries without a permit for these discharges in violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

32.     ALCOSAN will continue to violate Section 301 of the Clean Water Act, 33 U.S.C. § 1311, in this manner, unless enjoined by the Court.

33.     Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), ALCOSAN is liable for civil penalties of up to up to $27,500 per day for such violations occurring on or after January 30, 1997, pursuant to the Federal Civil Penalties Inflation

Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and up to $32,500 per day per violation on or after March 15, 2004, pursuant to 40 C.F.R. Part 19.

## SECOND CLAIM FOR RELIEF
*(ALCOSAN's Unpermitted Bypass at the Sewage Treatment Plant)*

34.     Paragraphs 1 through 33 are realleged and incorporated by reference.

35.     On numerous occasions since May 1, 2002, ALCOSAN bypassed part or parts of the Sewage Treatment Plant and/or intentionally diverted pollutants, including sewage, without complying with the conditions set forth in its NPDES Permit, in violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

36.     ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 301 of the Clean Water Act, 33 U.S.C. § 1311, in this manner, unless enjoined by the Court.

37.     Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), ALCOSAN is liable for civil penalties of up to up to $27,500 per day for such violations occurring on or after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and up to $32,500 per day per violation on or after March 15, 2004, pursuant to 40 C.F.R. Part 19.

9

## THIRD CLAIM FOR RELIEF
*(ALCOSAN's Illegal Discharges in Dry Weather from Permitted CSOs)*

38.     Paragraphs 1 through 37 are realleged and incorporated by reference.

39.     On numerous occasions since May 1, 2002, ALCOSAN discharged untreated or partially treated pollutants, including sewage, from the CSOs listed in the NPDES Permit, during periods without any precipitation influence, in violation of the conditions set forth in its NPDES Permit and Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

40.     ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 301 of the Clean Water Act, 33 U.S.C. § 1311, in this manner, unless enjoined by the Court.

41.     Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), ALCOSAN is liable for civil penalties of up to up to $27,500 per day for such violations occurring on or after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and up to $32,500 per day per violation on or after March 15, 2004, pursuant to 40 C.F.R. Part 19.

## FOURTH CLAIM FOR RELIEF
*(Effluent Limitation Violations)*

42.     Paragraph 1 through 41 are alleged and incorporated by reference.

43.     On numerous occasions since May 1, 2002, ALCOSAN discharged pollutants in violation of the effluent limitations set for Outfall 001 in the NPDES Permit. ALCOSAN reported these violations to the PADEP in monthly discharge monitoring reports ("DMRs"), and it certified the accuracy of its data on each DMR.

10

44.     ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 301 of the Clean Water Act, 33 U.S.C. § 1311, in this manner, unless enjoined by the Court.

45.     Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C . § 1319(d), ALCOSAN is liable for civil penalties of up to $27,500 per day for such violations occurring on or after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and up to $32,500 per day per violation on or after March 15, 2004, pursuant to 40 C.F.R. Part 19.

## FIFTH CLAIM FOR RELIEF
*(ALCOSAN's Failure to Properly Operate and Maintain Facilities)*

46.     Paragraphs 1 through 45 are realleged and incorporated by reference.

47.     The NPDES Permit requires ALCOSAN to properly operate and maintain the POTW, including the Sewage Treatment Plant and the Conveyance System.  Proper operation and maintenance of these facilities is set forth, in part, in nine minimum control  measures ("Nine Minimum Control Measures") described in EPA's Combined Sewer Overflow Policy (59 Fed. Reg. 18688, May 9, 1994).

48.     On numerous occasions since May 1, 2002, ALCOSAN failed to properly operate and maintain its facilities, in violation of its NPDES Permit and the Clean Water Act, by failing to comply with applicable Nine Minimum Control Measures.

49.     ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 301 of the Clean Water Act, 33 U.S.C. § 1311, unless enjoined by the Court.

11

50. Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), ALCOSAN is liable for civil penalties of up to $27,500 per day for such violations occurring on or after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and up to $32,500 per day per violation on or after March 15, 2004, pursuant to 40 C.F.R. Part 19.

### SIXTH CLAIM FOR RELIEF
*(ALCOSAN's Failure to Submit a Long Term Control Plan)*

51. Paragraphs 1 through 50 are realleged and incorporated by reference.

52. The NPDES Permit issued for ALCOSAN requires and has required the submittal to PADEP of a long term combined sewer overflow plan and schedule ("LTCP").

53. ALCOSAN failed and has continued to fail to submit to PADEP a LTCP in violation of the NPDES Permit and Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

54. ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 301 of the Clean Water Act, 33 U.S.C. § 1311, in this manner, unless enjoined by the Court.

55. Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), ALCOSAN is liable for civil penalties of up to $27,500 per day for such violations occurring on or after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and up to $32,500 per day per violation on or after March 15, 2004, pursuant to 40 C.F.R. Part 19.

## SEVENTH CLAIM FOR RELIEF
*(ALCOSAN's Failure to Implement a Long Term Control Plan)*

56.     Paragraphs 1 through 55 are realleged and incorporated by reference.

57.     The NPDES Permit requires, *inter alia,* that ALCOSAN implement a LTCP, and that it undertake certain associated combined sewer overflow control requirements, including: review and potential revisions to ALCOSAN's operation and maintenance procedures; review and potential revisions to ALCOSAN's implementation of a Nine Minimum Control plan; review and potential revisions to ALCOSAN's industrial pretreatment program; the elimination of Sanitary Sewer Overflows from the Conveyance and Treatment System; obligations for monitoring and reporting and cooperation with Customer Municipalities to implement area wide planning and combined sewer overflow control activities; protection of sensitive areas; public participation in developing the wet weather LTCP; maximization of flow to the Sewage Treatment Plant for treatment; evaluation and selection of control alternatives; evaluation and selection of a presumptive or demonstrative approach; development of an operational plan, implementation schedule and financing plan for selected control options; post-construction compliance monitoring and characterization; and monitoring and modeling of the combined sewer systems (collectively, the "Associated  LTCP Implementation Requirements").

58.     ALCOSAN has failed to submit a LTCP and, therefore cannot implement a LTCP or the Associated LTCP Implementation Requirements, in violation of the NPDES Permit and Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

59.     ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 301 of the Clean Water Act, 33 U.S.C. § 1311, unless enjoined by the Court.

13

60. Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), ALCOSAN is liable for civil penalties of up to $27,500 per day for such violations occurring on or after January 30, 1997, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, *as amended*, by 31 U.S.C. § 3701, and up to $32,500 per day per violation on or after March 15, 2004, pursuant to 40 C.F.R. Part 19.

## EIGHTH CLAIM FOR RELIEF
### (ALCOSAN's Failure to Monitor and Report)

61. Paragraphs 1 through 60 are realleged and incorporated by reference.

62. On numerous occasions since May 1, 2002, ALCOSAN failed to monitor and/or notify and report to EPA, including, but not limited to, instances in which untreated or partially treated pollutants, including sewage, were discharged, as required by the NPDES Permit and/or the Clean Water Act.

63. ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 301 of the Clean Water Act, 33 U.S.C. § 1311, unless enjoined by the Court.

64. Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), ALCOSAN is liable for civil penalties of up to $27,500 per day for such violations occurring on or after January 30, 1997, pursuant to the Federal Civil Penalties Infraction Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and up to $32,500 per day per violation on or after March 15, 2004, pursuant to 40 C.F.R. Part 19.

14

## PENDENT STATE CLAIMS

### State Statutes and Regulations

71.     Sections 201 and 202 of the Clean Streams Law, 35 P.S. §§691.201 and 691.202, prohibit the discharge of sewage by any person or municipality into any waters of the Commonwealth except in compliance with a permit issued under Section 202 of the Clean Streams Law, 35 P.S. §691.202.

72.     Section 92.5 of the regulations adopted by the Pennsylvania Environmental Quality Board, 25 Pa. Code §92.5, provides that an NPDES permit satisfies the permit requirement of Section 202 of the Clean Streams Law, 35 P.S. §691.202.

73.     Section 601 of the Clean Streams Law, 35 P.S. §691.601, provides in pertinent part:

> (a) Any activity or condition declared by this act to be a nuisance or which is otherwise in violation of this act, shall be abatable in the manner provided by law or equity for the abatement of public nuisances.

74.     Section 611 of the Pennsylvania Clean Streams Law, 35 P.S. §691.611, provides in pertinent part:

> It shall be unlawful to fail to comply with any rule or regulation of the department or to fail to comply with any order or permit or license of the department, to violate any of the provisions of this act or rules and regulations adopted hereunder, or any order or permit or license of the department, to cause air or water pollution, or to hinder, obstruct, prevent or interfere with the department or its personnel in the performance of any duty hereunder or to violate the provisions of 18 Pa. C.S. Section 4903 (relating to false swearing) of 4904 (relating to unsworn falsifications to authorities). Any person or municipality engaging in such conduct shall be subject to the provisions of Sections 601, 602 and 605.

75.     Section 605 of the Pennsylvania Clean Streams Law, 35 P.S. §691.601, provides in pertinent part:

In addition to proceeding under any other remedy available at law or equity for a violation of a provision of this act, rule, regulations, order of the department, or a condition of any permit issued pursuant to this act, the department, after hearing, may assess a civil penalty upon a person or municipality for such violate on. Such a penalty may be assessed whether or not the violation was willful. The civil penalty so assessed shall not exceed ten thousand dollars ($10,000) per day for each violation.

## NINTH CLAIM FOR RELIEF
*(Illegal Discharge of Untreated Sewage or Partially Treated Sewage
from the Conveyance System)*

76. Paragraphs 1 through 75 are realleged and incorporated by reference.

77. On numerous occasions since May 1, 2002, ALCOSAN discharged untreated or partially treated pollutants, including sewage, from outfalls, pump stations, and manholes within the Conveyance and Treatment System into the Ohio River, the Allegheny River, the Monongahela River, and/or their tributaries without a permit for these discharges in violation of Sections 201, 202 and 401 of the Clean Streams Law, 35 P.S. §§ 691.201, 691.201 and 691.401.

78. ALCOSAN will continue to violate Sections 201, 202 and 401 of the Clean Streams Law, 35 P.S. §§ 691.201, 691.202 and 691.401, in this manner, unless enjoined by the Court.

79. Pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605, ALCOSAN is liable for civil penalties of up to $10,000 per day for such violations.

## TENTH CLAIM FOR RELIEF
*(ALCOSAN'S Unpermitted Bypass at the Sewage Treatment Plant)*

80. Paragraphs 1 through 79 are realleged and incorporated by reference.

81. On numerous occasions since May 1, 2002, ALCOSAN bypassed part or parts of the Sewage Treatment Plant, and/or intentionally diverted pollutants, including sewage, without

16

complying with the conditions set forth in the NPDES Permit, in violation of Sections 201, 202 and 401 of the Clean Streams Law, 35 P.S. §§ 691.201, 601.202 and 691.401.

82.     ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Sections 201, 202 and 401 of the Clean Streams Law, 35 P.S. §§ 691.201, 691.202 and 691.401, in this manner, unless enjoined by the Court.

83.     Pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605, ALCOSAN is liable for civil penalties of up to $10,000 per day for such violations.

### ELEVENTH CLAIM FOR RELIEF
*(ALCOSAN'S Illegal Discharges in Dry Weather from Permitted CSOs)*

84.     Paragraphs 1 through 83 are realleged and incorporated by reference.

85.     On numerous occasions since May 1, 2002, ALCOSAN discharged untreated or partially treated pollutants, including sewage, from the CSOs listed in its NPDES Permit, during periods without any precipitation influence, in violation of the conditions set forth in its NPDES Permit and Section 202 of the Clean Streams Law, 35 P.S. § 691.202.

86.     ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 691.202 of the Clean Streams Law, 35 P.S. § 691.202, in this manner, unless enjoined by the Court.

87.     Pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605, ALCOSAN is liable for civil penalties of up to $10,000 per day for such violations.

### TWELFTH CLAIM FOR RELIEF
*(Effluent Limitation Violations)*

88.     Paragraph 1 through 87 are alleged and incorporated by reference.

89.     On numerous occasions since May 1, 2002, ALCOSAN discharged pollutants in violation of the effluent limitations set for Outfall 001 in the NPDES Permit. ALCOSAN reported these violations to the PADEP in monthly DMRs, and it certified the accuracy of its data on each DMR.

90.     ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 202 of the Clean Streams Law, 35 P.S. § 691.202, in this manner, unless enjoined by the Court.

91.     Pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605, ALCOSAN is liable for civil penalties of up to $10,000 per day for such violations.

## THIRTEENTH CLAIM FOR RELIEF
*(ALCOSAN's Failure to Properly Operate and Maintain Facilities)*

92.     Paragraphs 1 through 91 are realleged and incorporated by reference.

93.     The NPDES Permit requires ALCOSAN to properly operate and maintain the POTW, including the Sewage Treatment Plant and the Conveyance System. Proper operation and maintenance of these facilities is set forth, in part, in the Nine Minimum Control Measures described in EPA's Combined Sewer Overflow Policy (59 Fed. Reg. 18688, May 9, 1994).

94.     On numerous occasions since May 1, 2002, ALCOSAN failed to properly operate and maintain its facilities, in violation of the NPDES Permit and the Clean Streams Law, by failing to comply with applicable Nine Miminum Control Measures.

95.     ALCOSAN will continue to violate its NPDES Permit, and will therefore also continue to violate Section 202 of the Clean Streams Law, 35 P.S. § 691.202, in this manner, unless enjoined by the Court.

96.     Pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605,

ALCOSAN is liable for civil penalties of up to $10,000 per day for such violations.

### FOURTEENTH CLAIM FOR RELIEF
*(ALCOSAN's Failure to Submit a Long Term Control Plan)*

97.     Paragraphs 1 through 96 are realleged and incorporated by reference.

98.     The NPDES Permit requires the submittal to PADEP of a LTCP.

99.     ALCOSAN failed, and has continued to fail, to submit to PADEP a LTCP in

violation of the NPDES Permit and Section 202 of the Clean Streams Law, 35 P.S. § 691.202.

100.     ALCOSAN will continue to violate its NPDES Permit, and will therefore

continue to violate Section 202 of the Clean Streams Law, 35 P.S. § 691.202, in this manner,

unless enjoined by the Court.

101.     Pursuant to Section 605 of the Clean Streams Law, 33 P.S. § 691.605,

ALCOSAN is liable for civil penalties of up to $10,000 per day for such violations.

### FIFTEENTH CLAIM FOR RELIEF
*(ALCOSAN's Failure to Implement a Long Term Control Plan)*

102.     Paragraphs 1 through 101 are realleged and incorporated by reference.

103.     The NPDES Permit requires, inter alia, that ALCOSAN implement an LTCP, and

that it undertake Associated  LTCP Implementation Requirements.

104.     ALCOSAN has failed to submit a LTCP and, therefore cannot implement a LTCP

or the Associated LTCP Implementation Requirements, in violation of the NPDES Permit and

Section 202 of the Clean Streams Law, 35 P.S. § 691.202.

19

105.   ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 202 of the Clean Streams Law, 35 P.S. § 691.202, in this manner, unless enjoined by the Court.

106.   Pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605, ALCOSAN is liable for civil penalties of up to $10,000 per day for such violations.

**SIXTEENTH CLAIM FOR RELIEF**
*(ALCOSAN's Failure to Monitor and Report)*

107.   Paragraphs 1 through 106 are realleged and incorporated by reference.

108.   On numerous occasions since May 1, 2002, ALCOSAN failed to monitor and/or notify and report to PADEP, including, but not limited to,  instances in which untreated or partially treated pollutants, including sewage,  were discharged, as required by the NPDES Permit and/or the Clean Streams Law.

109.   ALCOSAN will continue to violate its NPDES Permit, and will therefore continue to violate Section 202 of the Clean Streams Law, 35 P.S. § 691.202, in this manner, unless enjoined by the Court.

110.   Pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605, ALCOSAN is liable for civil penalties of up to $10,000 per day for such violations.

**PENDENT COUNTY CLAIMS**

**County Statutory and Regulatory Background**

117.   Section 10 of the Local Health Administration Law, Act 315, 35 P.S. §12010(c) provides:  After it has been established, the county department of health shall prevent or remove conditions which constitute a menace to public health.

20

118.     Section 10 of the Local Health Administration Law, Act 315, 35 P.S. §12010 (f)

provides in pertinent part:

> After it has been established, the county department of health shall make and
> enforce such rules and regulations . . . and institute such programs not
> inconsistent with law as may be necessary for the promotion and preservation of
> the public health.

119.     Section 12 of the Local Health Administration Law, Act 315, 35 P.S. §12012(d)

provides:  Whenever the health director finds a nuisance detrimental to the public health, he shall

cause such nuisance to be abated.

120.     Section 4.1 of the Allegheny County Health Department's Rules and Regulations,

Article XIV, "Sewage Management," provides in pertinent part:

> The Director is authorized to promulgate minimum standards governing the
> management, design, construction, installation, reconstruction, and operation of
> . . . community sewage systems.  These minimum standards will ensure that the
> discharge from any . . . community sewage [system]:  (A) Does not actually or
> potentially contaminate any drinking water supply; (F) Does not contaminate any
> stream or other water of the Commonwealth; and (G) Will not violate the PA
> Clean Streams Law, as amended; the PA Sewage Facilities Act, as amended; or
> any other statute or regulation referring to water pollution, sewage disposal, or
> nuisances.

121.     Section 4.2 of the Allegheny County Health Department's Rules and Regulations

for Sewage Management, Article XIV, provides:

> Violations of the standards identified in §1404.1 are declared health hazards
> and/or nuisances and it shall be unlawful for any person to continue to allow, or
> fail to eliminate the discharge of sewage in a manner, which fails to conform to
> the requirements in §1404.1, or fail to abate the nuisance caused by such
> discharge of sewage.

122.     Section 16.1 of the Allegheny County Health Department's Rules and

Regulations, "Sewage Management," Article XIV, provides:

> A person who violates any of the provisions of this Article or any order issued by
> the Director under this regulation is subject to a Civil Penalty in accordance with

21

the provisions of the Allegheny County Health Department Rules and Regulations, Article XVI, "Environmental Health Civil Penalties."

123. Section 5(A) of the Allegheny County Health Department's Rules and Regulations, "Environmental Health Civil Penalties," Article XVI, provides: The Director may assess a civil penalty against any person for a violation of any ACHD Article as provided herein.

124. Section 5(B) of the Allegheny County Health Department's Rules and Regulations, "Environmental Health Civil Penalties," Article XVI, provides:

> The Director may assess a civil penalty against such person whether or not the violation is willful. The penalty so assessed shall not exceed ten thousand dollars ($10,000) plus up to two thousand five hundred dollars ($2,500) for each day of continued or repeated violation.

### SEVENTEENTH CLAIM FOR RELIEF
*(Illegal Discharge of Untreated Sewage or Partially Treated Sewage from the Conveyance System)*

125. Paragraphs 1 through 124 are realleged and incorporated by reference.

126. On numerous occasions since May 1, 2002, ALCOSAN discharged untreated or partially treated pollutants, including sewage, from outfalls, pump stations, and manholes within the Conveyance System into the Ohio River, the Allegheny River, the Monongahela River, and/or their tributaries without a permit for these discharges in violation of Section 4.1 of ACHD's Article XIV.

127. ALCOSAN will continue to violate Section 4.1 of ACHD's Article XIV, in this manner, unless enjoined by the Court.

128. Pursuant to Section 5(B) of ACHD's Article XVI, ALCOSAN is liable for civil penalties of up to $10,000 for such violation plus up to $2,500 for each day of continued or repeated such violation.

## EIGHTEENTH CLAIM FOR RELIEF
*(ALCOSAN'S Unpermitted Bypass at the Sewage Treatment Plant)*

129. Paragraphs 1 through 128 are realleged and incorporated by reference.

130. On numerous occasions since May 1, 2002, ALCOSAN bypassed part or parts of the POTW, including, but not limited to, at the Sewage Treatment Plant, and/or intentionally diverted pollutants, including sewage, without complying with the conditions set forth in its NPDES Permit, in violation of Section 4.1 of ACHD's Article XIV.

131. ALCOSAN will continue to violate Section 4.1 of ACHD's Article XIV, in this manner, unless enjoined by the Court.

132. Pursuant to Section 5(B) of ACHD's Article XVI, ALCOSAN is liable for civil penalties of up to $10,000 for such violations plus up to $2,500 for each day of continued or repeated such violation.

## NINETEENTH CLAIM FOR RELIEF
*(ALCOSAN's Illegal Discharges in Dry Weather from Permitted CSOs)*

133. Paragraphs 1 through 132 are realleged and incorporated by reference.

134. On numerous occasions since May 1, 2002, ALCOSAN discharged untreated or partially treated pollutants, including sewage, from the CSOs listed in its NPDES Permit, during periods without any precipitation influence, in violation of the conditions set forth in its NPDES Permit and Section 4.1 of ACHD's Article XIV.

135. ALCOSAN will continue to violate Section 4.1 of ACHD's Article XIV, in this manner, unless enjoined by the Court.

136. Pursuant to Section 5(B) of ACHD's Article XVI, ALCOSAN is liable for civil penalties of up to $10,000 for such violation plus up to $2,500 for each day of continued or repeated such violation.

23

## PRAYER FOR RELIEF

WHEREFORE, The Plaintiffs respectfully pray that this Court:

A.      Permanently enjoin ALCOSAN from discharging pollutants except as expressly authorized by the Clean Water Act, the Clean Streams Law, the limitations and conditions of the NPDES Permit and ACHD's Article XIV.

B.      Order ALCOSAN to take all steps necessary to comply with the Clean Water Act, the Clean Streams Law, the limitations and conditions of the NPDES Permit, and ACHD's Article XIV.

C.      Assess civil penalties against ALCOSAN for up to $27,500 per day through March 14, 2004, and up to $32,500 per day thereafter, for each violation of the Clean Water Act and/or any applicable NPDES Permit.

D.      Assess civil penalties against ALCOSAN for up to $10,000 per day for each violation of the Clean Streams Law and/or any applicable NPDES Permit.

E.      Assess civil penalties against ALCOSAN for up to $10,000 per initial violation of ACHD's XIV plus up to $2,500 for each day of each continued or repeated violation.

F.      Award the Plaintiffs their costs and fees of this action; and

G.      Grant such other and further relief as this Court may deem appropriate.

Respectfully submitted,

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

24

MATTHEW W. MORRISON
Senior Counsel
Environmental Enforcement Section
U.S. Department of Justice
Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-3932

MARY BETH BUCHANAN
United States Attorney
Western District of Pennsylvania


PAUL E. SKIRTICH
Assistant United States Attorney
Penn. Bar No. 30440
700 Grant Street
Pittsburgh, PA  15219
(412) 894-7418

BRUCE M. HERSCHLAG
Assistant Counsel
PA I.D. No. 58304
Commonwealth of Pennsylvania,
Department of Environmental Protection
400 Waterfront Drive
Pittsburgh, PA 15222

HENRY MILLER, III
Solicitor
Allegheny County Health Department
3333 Forbes Avenue
Pittsburgh, PA 15213
(412) 578-8320
PA I.D. No. 23862

5-24-07

REBECCA E. MORRIS-CHATTA
Assistant Solicitor
Allegheny County Health Department
3333 Forbes Avenue
Pittsburgh, PA 15213
(412) 578-8320
PA I.D. No. 92419

OF COUNSEL:
YVETTE ROUNDTREE
Office of Regional Counsel (3RC20)
EPA Region III
1650 Arch Street
Philadelphia, PA 19103
(215) 814-3692


SUSHILA NANDA
Attorney/Advisor
U.S. Environmental Protection Agency
Office of Enforcement (2243A)
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460
(202) 564-4088